PHYFE *v.* WARDELL and another.

Where circumstances denote fraud in omitting to reduce a part of an agreement into writing, the whole of it is open to parol proof. The Court disregards the writing and treats the whole transaction as a verbal contract.

Bill filed by the lessee of premises, which he held under a church lease, against persons who had agreed in writing to purchase his lease. Complainant alleged that an implied right of renewal entered into the purchase, and that defendants were to take, subject to a burthen upon a part of the premises of a lease for a year which had been granted by the complainant. The buyers omitted to insert these things in the written agreement, but verbally recognized them; and they managed to get a renewal in their own names, through the recommendation of the complainant; but declined, inasmuch as the old term had in the mean time expired, to make good their agreement with the latter, and proceeded to eject the tenant who was to have held possession of a part for a year. Complainant prayed that the parties might pay their purchase money and perform their contract with him. A general demurrer was interposed: but overruled.

Bill by Duncan Phyfe, the lessor of certain real estate, against Charles Wardell and Britain L. Woolley, as purchasers, in order to compel payment of purchase money and obtain specific performance of a contract. It stated, that the complainant was possessed of a leasehold interest in a lot of ground in Vesey street, city of New York, under lease from the officers of St. Michael's church for a term of years, and which would expire on the twenty-fifth day of March, one thousand eight hundred and thirty-two; and became vested in the complainant through diverse mesne assignments. That on the first day of February, one thousand eight hundred and thirty-two, he entered into an agreement with one Decker, to underlet to him part of the premises for a year, from the first day of May following; but was ignorant at the time that the original lease would expire on the said twenty-fifth day of March. The bill also set forth, that about the fifteenth day of February, one thousand eight hundred and thirty-two, the defendants applied to the complainant to purchase the unexpired term, with the right and privilege which

*April 11th.*
1833.

*Specific performance.*
*Fraud in omitting part of written contract.*
*Demurrer.*

he, as the holder of the lease, had to a renewal of it; and they represented their having bought leases, covering adjoining lots, and their desire of improving the whole of the property. He, at first, declined negociating with them; but they subsequently made repeated applications and offered to purchase the remainder of the term, subject to Decker's lease for a year, and assume the complainant's responsibility to him—stating their object to be, to get possession of the lot for purposes of improvement and because they could then put up buildings, which they wished to erect upon the premises and on adjoining lots, at one and the same time. The bill charged it to have always been a custom for St. Michael's Church to grant renewals of leases to persons possessed of leases which were about to expire, in preference to giving them to strangers: and that such privilege of renewal formed a valuable part of the leases and always entered into the consideration of sale and transfer, and to obtain the privilege of renewal was the primary object which the defendants had in view in proposing to purchase the unexpired term, and it was their intention immediately to procure a new lease of the lot, remove the old buildings and make new and expensive improvements—the latter of which, indeed, they were doing. That after much solicitation and on the ninth day of March, one thousand eight hundred and thirty-two, the complainant consented and agreed to sell and assign his unexpired term and right of renewal in the premises to the defendants, for the price of two thousand six hundred and fifty dollars: subject however to the lease for a year granted to Decker. A memorandum in writing was then signed and exchanged between the parties. The one signed by the defendants was in these words; "We agree to purchase of D. "Phyfe, for the consideration of two thousand six hundred "and fifty dollars, the lease of the lot No. 38 Vesey street, "with the buildings thereon, to be paid for in the first week "in May next, when possession and a title is to be given for "the same. March 9, 1832." The bill then alleged, that, upon receiving this writing the complainant objected to it: because his right to renewal and the defendants' engagement to assume the responsibility to Decker were not mentioned. Also, that they thereupon replied, those points were

admitted and well understood and no advantage would be taken by them of the omission; and the complainant thereupon rested satisfied. It further alleged, that neither party had then examined the lease or knew the period of its expiration, nor was it considered material, as the defendants had previously determined, in case they purchased, to procure a renewal immediately: but the agreement was made upon the express understanding that the unexpired term was sold and purchased, whatever it might, upon examination, prove to be. That shortly afterwards, the complainant was informed by the agent of the Church, of the lease having expired; and an offer of renewal was made to him; and he then informed the agent of his having sold to the defendants and that the Church might agree with and make the new lease directly to them—and to all of which they assented and the defendants well knew he gave those directions in the full confidence of their performing their part of the contract of purchase. And that, in pursuance of such directions, a new lease was made to them by the Church on the first day of May, one thousand eight hundred and thirty-two, for the term of twenty-one years. The bill charged, that if such directions had not been given, a new lease would have been granted to the complainant in his own name. That, after the directions were given to make out the lease in the names of the defendants, but before it was delivered, the complainant discovered, upon conversing with the defendants, that they did not intend to observe the agreement made with them. He, thereupon, notified the agent of the church not to deliver the lease until the defendants should have paid the purchase money and fulfilled their agreement with him; and yet the lease was delivered to them. That the complainant had since requested payment of the two thousand six hundred and fifty dollars, which they had refused; and they had caused Decker, the tenant under the complainant, to be ejected, and had demolished the old buildings and had commenced the erection of new ones upon the lot, and, in consequence of being evicted, Decker claimed damages from the complainant and threatened him with an action at law. The bill prayed a specific performance of the agreement, by the defendants paying to the complainant the sum of two thousand six ·

7

PHYFE
*v.*
WARDELL.

hundred and fifty dollars, as well as such amount as he might be compelled to pay in damages to Decker—or that they might be decreed to transfer and assign the renewed lease to the complainant.

A general demurrer was interposed.

Mr. *D. Selden*, in support of the demurrer.

Mr. *J. Duer*, for the complainant.

*June 25th.*    THE VICE-CHANCELLOR.—The bill shows an, apparently, fair contract, binding upon the defendants and virtually fulfilled by the complainant; while enough is stated, to make out a case of fraud against the defendants, in their procuring a new lease under the seeming sanction of the contract and yet attempting to disclaim it and holding the demised property as though it had never been made.

It has been said in argument by the counsel for the defendants, that the church was under no obligation to grant a new lease to any one—they had a right to refuse it to the complainant, and virtually they did do so by delivering a lease to the defendants after notice from him not to deliver it. But the bill states, and, at present, I must be governed by it, that, by the custom of the church, the complainant was entitled to the new lease and the same would have been granted to him and not to the defendants if no agreement for the sale of the privilege or good will, which was a marketable article, had taken place, and also provided no directions for making out the new lease to them had been given by him. This is a matter of fact. It is an averment in the bill, which, uncontradicted, precludes all argument to the contrary. Nor do I understand, how the notice which he gave not to deliver the lease could put an end to the contract and leave the defendants at liberty to make their own contract with the church independent of the complainant. The notice did not amount to any relinquishment of right or privilege in the lease which they were about to take; nor did it show any rescinding of the contract. The object was to secure the payment of the purchase money and a performance, on their parts, of the agreement, by inducing the agent of the church

to withold the delivery of the lease until they complied; and this was perfectly consistent with the agreement as a subsisting one, and which the complainant meant to enforce. At present I am so bound to regard it.

The question then is, whether this is such an agreement as equity will aid a party in enforcing? There would be no necessity for resorting to this Court, if the only object of the bill were to recover payment of a sum of two thousand six hundred and fifty dollars. A court of law could afford an adequate remedy; and, as a general rule, equity does not interfere to decree a specific performance of contracts, except where the legal remedy is inadequate or defective and where something remains to be done over and above the mere payment of money. But, here is something more. We find it in the shape of an indemnity against any damages which may be claimed by Decker. The defendants made their purchase, subject to this man's right of occupancy for one year; and if they chose to dispossess or prevent him from occupying, then those who have assumed the responsibility are bound, as a matter of common justice, to protect the complainant from the consequences.

. An objection is taken, because this part of the agreement is not in writing; and, based upon this objection, it is said the complainant cannot be permitted to allege or give it in evidence: more especially in the presence of a written memorandum which must be supposed to contain the whole of the agreement. The bill sets forth the reason of the omission: it was induced by the representations of the defendants and the complainant confided in them. · If they were now permitted to take advantage of the omission and hold the complainant strictly to the written memorandum as the only evidence of the agreement, this court would be sanctioning the commission of a fraud. For the purpose of preventing such a consequence, this court, under the circumstances, is at liberty to disregard the writing and treat the whole transaction as a verbal contract. And, upon the basis of part performance, where possession has been taken or the acts done amount to part performance, it may receive parol proof of the whole agreement, independent of or in connection with what may be in writing, in order to make out the con-

1833.

PHYFE
v.
WARDELL.

tract. This principle appears to have been acknowledged by Ch. J. Thompson before the court of Errors, in *Parkhurst* v. *Van Cortland,* 14. J. R. 33.; and this I think is fairly deducible from what was said by Lord Redesdale in *Watt* v. *Grove,* 2. Sch. & Lef. 502, namely, that under circumstances (like the present) which denote fraud in omitting to reduce a part of the agreement into writing, the whole is open to parol proof. It is for this reason a court of equity has jurisdiction and that it must, necessarily, exercise more extensive powers in its investigation, when going through the medium of parol evidence, than a court of law can do, which, by its very rules and mode of proceeding, cannot enter into the question of fraud or mistake for the purpose of setting aside or reforming a written contract: *Fullagar* v. *Clark,* 18. Ves. 483.

Upon the ground of there having been this verbal assurance in relation to Decker's tenancy (and relying upon which the complainant forbore to insist upon its insertion in the written memorandum), with the defendants subsequent refusal to abide by it, the complainant may be entitled, at least, to some portion of the relief which he seeks in this court: *Chamberlain* v. *Agar,* 2. V. & B. 262.; and, as the bill is good for one purpose, a general demurrer to the whole of it cannot be sustained.

The demurrer must be overruled, with costs.