Phillips *v.* Berger.

Same Term.    *Before the same Justice.*

### PHILLIPS *vs.* BERGER.

The general rule is for courts of equity not to entertain jurisdiction to decree a specific performance of agreements respecting goods, chattels, stock, choses in action, and other things of a mere personal nature. But the rule is qualified, and is limited to cases where a compensation in damages would furnish a complete and satisfactory remedy.

A specific performance of a personal contract will be enforced, in equity, where the party wants the thing in specie, and he cannot otherwise be compensated; where an award of damages would not put him in a situation as beneficial as if the agreement were specifically performed; or where compensation in damages would fall short of the redress to which he is entitled.

The remedy of a specific performance being mutual, and reciprocal, if the party agreeing to sell an article would be bound to perform specifically, he can compel the other party to pay, notwithstanding that a decree in his favor would be nothing more than a verdict and judgment at law.

An agreement, by a creditor, to take less than the face of his demand, upon receiving security for the amount to be paid, is a valid agreement, by reason of the additional benefit arising out of the security stipulated for.

Phillips *v.* Berger.

In Equity. Bill for specific performance. The plaintiff was the owner of a judgment recovered in the superior court of New-York, for $9837,66, against John C. and Christian B. Morrison, on which a creditor's bill had been filed. During the pendency of that suit, the defendant entered into a contract with the plaintiff, whereby the plaintiff agreed that for $4500 and the costs, he would compromise the claim. The agreement, as set out in the pleadings, was in the form of instructions from the plaintiff to his agent, with a memorandum signed by the defendant, in the following words:

"Salem, April 20, 1842.
"Messrs. Th's F. Youngs & Co.
"Dr Sirs—I have agreed with Mr. Berger to compromise my claim against Messrs. J. C. Morrison & Son, by accepting Mr. Berger's note, (to be endorsed to your satisfaction at 6 mo's *with interest,*) for $4500, (say forty-five hundred dollars,) it being further understood that Mr. Berger is to settle with you for all expenses which you have incurred, or for which you are liable on account of prosecuting the claim.

"You will therefore please do the needful to carry this agreement into effect.

"Yours truly,
(Signed)          S. C. Phillips."

"Salem, April 20, 1842. The above copy of an open letter from Mr. Phillips to Messrs. T. F. Youngs & Co. of which I am the bearer, is a correct memorandum of an agreement this day concluded between Mr. Phillips and myself.
(Signed)          Wm. Burger."

The defendant afterwards informed the plaintiff that he acted only as agent, and that his principal declined to perform the contract.

*H. F. Clark & D. Lord,* for the plaintiff, insisted that the agreement was a contract for the sale of the plaintiff's judg-

Phillips *v.* Berger.

ment, and that its specific performance could be decreed in equity.

*C. O'Conor*, for the defendant, claimed that it was a mere agreement by the friend of a debtor to· compromise his debt; and so long as it was executory did not bind either party.

Edmonds, J.    If this were a contract for the absolute purchase, by the defendants, of the judgments against the Morrisons, I entertain no doubt that a bill for a specific performance would lie.    The jurisdiction of this court, in compelling a specific performance of contracts relating to lands, is pretty well settled; but not so in regard to personal contracts—that is, contracts for personal acts, or for the sale and delivery of personal property.    The reason for the distinction between the two classes of contracts has long since passed away.    Yet the distinction still, in a measure, remains.    Judge Story, with great propriety, in his commentaries on equity jurisprudence, remarks, that there is no reasonable objection to allowing the party who is injured by the breach to have an election either to take damages at law, or to have a specific performance in equity.    The courts have not yet gone that length; but when they do, they will relieve the subject of specific performance of many of its embarrassments, and remove from this branch of equity jurisprudence many of the artificial distinctions to which the courts have been compelled to have recourse in order to justify their advance toward such a sound general rule.

The rule in regard to personal contracts yet falls short of that, and is extended only to cases where the party wants the thing in specie and he cannot otherwise be compensated; that is, where an award of damages would not put him in a situation as beneficial as if the agreement were specifically performed. (*Harnett* v. *Yielding*, *per Ld. Redesdale*, 2 *Sch. & Lef.* 552.) Or, where the compensation in damages would fall short of the redress which his situation might require.    (*Story's Eq. Juris.* § 716.)    The general rule is not to entertain jurisdiction to decree a specific performance of agreements respecting goods,

Phillips v. Berger.

chattels, stock, choses in action and other things of a mere personal nature; but the rule is qualified, and is limited to cases where a compensation in damages would furnish a complete and satisfactory remedy. (*Story's Eq. Jur.* § 718. *Wood* v. *Radcliffe,* 3 *Hare's Rep.* 304.)

The contract in this case respects a chose in action, viz. the sale or compromise of a judgment. And for the defendant's refusal to complete his purchase, an action at law would lie, and damages could be recovered against him. But what damages? And would that be a complete and satisfactory remedy? The remedy of a specific performance is mutual and reciprocal, as well for the vendor as the purchaser; and the true inquiry is, would an action at law afford to the defendant a complete and satisfactory remedy, if the plaintiff had refused to assign or release the judgment according to his contract? I can well imagine many uses to which the defendant might have put the judgment, which could not be at all, except by very vague conjectures, measured or estimated. And if, on that account, he would have been entitled to a specific performance, then for the same reasons the plaintiff would be entitled. But without enlarging upon this train of reasoning, I refer to the case of *Adderley* v. *Dixon,* (1 *Sim: & Stu.* 607,) as precisely in point, and entirely decisive of this branch of the case. In that case the contract was for the purchase of debts which had been proved under a bankrupt's commission. In that case, as in this, the bill for a specific performance was filed by the vendor; and it was objected that if the court were to make a decree, it would in effect be nothing more than a verdict in an action of assumpsit for the amount of the purchase money. That is precisely the objection made in this case. But the court decreed a specific performance, because damages at law could not accurately represent the value of the debts, and to compel the purchaser to take such damages would be to compel him to sell them at a conjectural price; and because where a bill would lie for the purchaser it would lie for the vendor. This case was approved by the late vice chancellor,

in *Hamblin* v. *Dinneford*, (2 *Edw.* 531,) and is undoubtedly good law.

If, then, the contract between these parties is binding upon them, its performance can be enforced here. But is it binding? If it is a contract for the purchase of the judgment by the defendant, it is undoubtedly binding. If, however, it was merely an agreement that the plaintiff would receive one half his demand and release the residue, whether it could be enforced either in law or equity is a different question.

The general rule is well settled that the payment of a less sum than the whole debt, without a release, is no satisfaction of the plaintiff's claim. (*Cumber* v. *Ware*, 1 *Str.* 426. *Harrison* v. *Wilcox*, 2 *John. Rep.* 449. *Fitch* v. *Sutton*, 5 *East*, 232. *Seymour* v. *Minturn*, 17 *John. Rep.* 169. *Boyd* v. *Hitchcock*, 20 *Id.* 78.) And a mere agreement to accept less than the real debt, would be *nudum pactum*. (*Heathcote* v. *Cruikshanks*, 2 *Term Rep.* 24.) But it is otherwise when a beneficial interest is acquired and a valuable consideration received by the creditor when he agrees to accept less than his whole demand. It would be an abuse of terms to call that a *nudum pactum*. (20 *John. Rep.* 78.) In such cases the rule is, that where by the agreement to settle there is a benefit, or even a legal possibility of benefit to the creditor, the additional weight will turn the scale and render the consideration sufficient to support the agreement. (*Cumber* v. *Ware*, 1 *Smith's Leading Cases*, 147. *Le Page* v. *McCrea*, 1 *Wend.* 172. *Nevins* v. *Deperries*, 4 *N. Y. Legal Observer*, 70.) So that if a debtor offers additional security on condition that his creditor shall give up a portion of the debt, and the creditor accepts such security for a less sum, as a satisfaction of the whole debt, it is a valid discharge. (*Sheehy* v. *Mandeville*, 6 *Cranch*, 253.) And an agreement to discharge the debt on receiving such additional security would be binding. (*Steinman* v. *Magnus*, 11 *East*, 390.)

Whether, then, the agreement between these parties was one for the purchase of the judgment by the defendant, or one by which the plaintiff agreed to receive security for less than the

amount of his claim and discharge, it was valid and binding on the plaintiff, and its performance by him could have been enforced in equity; and on the principle of mutuality he can enforce it on his part.

There must therefore be a decree for the plaintiff.

CLINTON GENERAL TERM, October, 1847.  *Cady, Paige, and Willard,* Justices.