## CALIFORNIA SUPREME COURT.

### CARPENTER agt. ATHERTON.

In *California,* where a party enters into a written contract for the payment of a sum of money in *gold coin* of the United States,—such contracts being authorized by a statute of that state, he will be decreed to *specifically perform* such contract, and make payment in gold coin. And it is no defence to an action for such specific performance that the defendant has, before suit brought, tendered in payment to the full amount of his obligation, United States *legal tender notes.*

*Sacramento, California, August* 16, 1864.

CURREY, J. The defendant made and delivered to plaintiff his contract in writing, bearing date the 2d of April, 1864, by which for a valuable consideration he promised to pay to the plaintiff the sum of $500, on demand, in United States gold coin. Some time afterwards, the plaintiff duly demanded payment of the sum of money due on this contract, in the kind of currency specified therein. The defendant refused to pay in gold coin, but subsequently, and before this action was commenced, tendered and offered to pay to the plaintiff certain United States notes, amounting in the aggregate to the sum of the principal and interest due to the plaintiff. The United States notes so tendered were issued under and in pursuance of an act of congress of the United States, entitled, an act to authorize an additional issue of United States notes, and for other purposes, approved July 11th, 1862. By this act the notes so tendered were made lawful money, and a legal tender in pay-

ment of all debts public and private within the United States, except as therein otherwise provided. The defendant, by his answer, pleaded the tender of these United States notes for payment of the amount due, and brought the same into court with his answer, ready to be paid to the plaintiff. The plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute a defence, and specified as causes of demurrer :

*First.* That the United States notes tendered are not money, and the plaintiff was not, nor is he by law, obliged to receive the same in payment of money due him.

*Second.* That by the contract on which the action was brought, the defendant promised to pay the sum of money due the plaintiff in gold coin of the United States, and the defendant does not aver a tender of the amount due in such coin.

The demurrer was sustained, and at the same time leave was granted to defendant to amend his answer, which he declined to do ; whereupon the court ordered and adjudged that the plaintiff have and recover against the defendant, the principal and interest due, and the costs of the action, specifying the amount thereof, payable in gold coin of the United States. And it was further ordered and adjudged, that the plaintiff have execution to enforce the collection of such judgment, with the interest which might accrue thereon; and that such execution specify, direct, and provide that the judgment and all accruing interest thereon shall be collected only in gold coin of the United States. The defendant has appealed from this judgment, which brings up the case to be considered upon certain alleged errors that are assigned in a well drawn bill of exceptions, presenting the whole case upon its real merits. The exceptions taken to the rulings and judgments of the court, raise the question as to the validity of the act of the legislature in the state, passed on the 27th of April, 1863, commonly called the " specific contract law," in so far as its provis-

Carpenter agt. Atherton.

ions relate to the points involved in this controversy (*Laws* 1863, *p.* 687). The second section of this act provides that in an action on a contract or obligation in writing for the direct payment of money, made payable in a specified kind of money or currency, judgment for the plaintiff, whether the same be by default or after verdict, may follow the contract or obligation, and be made payable in the kind of money or currency specified therein.

The third section of the act provides that the execution to be issued on such judgment shall state the kind of money or currency on which the judgment is payable, and shall require the sheriff to satisfy the same in the kind of money or currency in which it is made payable, and that the sheriff shall refuse payment in any other kind of money or currency, and in case of the levy and sale of the property of the judgment debtor, he shall refuse payment from any purchaser at such sale in any other kind of money or currency than that specified in the execution.

It is a cardinal rule in the construction of statutes, that every reasonable intendment is to be made in support of their validity. (*Morris* agt. *People,* 3 *Denio,* 381; *ex parte McCollom,* 1 *Cowen,* 564; *Fletcher* agt. *Peck,* 1 *Cranch,* 87; *People* agt. *Supervisors of Orange,* 17 *N. Y. R.* 241.) But whenever it is clear that the legislature has transcended its powers in the passage of an act which is repugnant to the paramount law, it is among the most important duties of the judicial authorities to declare the invalidity of the act so passed. (*Adams* agt. *How,* 14 *Mass.* 365; *Fletcher* agt. *Peck,* 6 *Cranch,* 87.)

By the laws of the land the country is furnished with three kinds of money, gold, silver and United States notes, as media of exchange. Money made by the coinage of gold or silver, is a legal tender as prescribed by law, in the discharge of obligations which are to be satisfied by the payment of money in general terms. And we have held in *Sick* agt. *Faulkner,* and in other cases, that the notes

of the United States, issued by the authority of the laws of the national legislature, form a lawful money, and a legal tender in the payment of private debts. But it does not follow that every kind or any kind of money which by law is a legal tender in the payment of debts, may be tendered in satisfaction of every obligation capable of performance by the transfer and delivery of property in satisfaction of it. In *Sick* agt. *Faulkner*, we said upon good authority that gold and silver are commodities, the value of which is estimated by the value of other things, in the same manner as that of the latter is estimated by the value of gold and silver. This quality or character of the precious metals is not destroyed by their division into parcels bearing the impression of the mint, possessing a specific value ascertained and regulated by positive law. If one agrees generally to pay or deliver to another a given number of dollars, he may perform his contract by the payment of the specified sum in any kind of dollars which are recognized as such, and made a legal tender for the purpose by the law of the land, for by doing so he will fill his engagement according to its letter. But if he contracts, for a valuable consideration, to pay his debt in a particular kind of money, his obligation cannot be discharged in accordance with his stipulation, by payment in a different kind of money, and though by the unaided rules of the common law he could not be compelled to perform specifically that which he had promised, yet in morals, his obligation to do so is in no degree diminished. Courts of equity from an early period, have exercised jurisdiction, enforcing the specific performance of contracts, for the reason that the courts of common law though recognizing the obligation of parties to a contract to perform their respective parts of it according to its terms, could not afford this remedy to the party injured by the non performance of the other. At law, the party disappointed by the breach of the contract, was compelled to be satisfied with money as a substitute for the

thing for which he had contracted, and to which he was in justice entitled. The money recovered in such cases by way of damages, was considered as a substantial equivalent for the injury sustained by the breach of the contract, and upon this subject Judge STORY says : " It is against conscience that a party should have a right of election whether he will perform his covenant or only pay damages for the breach of it" (*Story on Equity Juris.* 717, *a*).

Contracts relating to real property, embraced by far the most numerous instances in which the jurisdiction of a court of equity may be invoked to administer the remedy of specific performance. But this species of remedy has not been limited to the enforcement in terms of agreements relating to lands. It has been in many instances extended to enforcing specifically contracts relating to personal property, and also to the performance of personal acts, though in such cases peculiar circumstances must exist to call forth the remedial agency of the court. The reason assigned for the universal exercise of this jurisdiction as to contracts respecting land, and not in relation to agreements concerning personal property, is not because of any distinction between realty and personalty, but because in the former case damages at law cannot be regarded as a complete, and adequate remedy for breach of the contract, while in the latter a compensation in damages is deemed commensurate with the injury sustained; but whenever a violation of a contract relating to personal property cannot be correctly estimated in damages, or whenever from the nature of the contract a specific execution of it is indispensable to justice, a court of equity will not refuse its aid. (*Duff* agt. *Fisher*, 15 *Cal.* 381 ; *Willard's Eq. Juris.* 271, 280 ; *Fells* agt. *Reed*, 3 *Vesey*, 70 ; *Sulliuan* agt. *Zuck*, 1 *Mary. Ch. Decisions*, 50 ; *Waters* agt. *Howard*, *Id.* 112 ; *Barr* agt. *Tapsley*, 1 *Wheat.* 152 ; *Philips* agt. *Berger*, 2 *Barb.* 608, *and* 8 *Id.* 128 ; *Stuyvesant* agt. *The Mayor of New York*, 11 *Paige*, 414, 427 ; *Story's Eq. Juris.* §§ 712, 720.)

The man who contracts to sell and convey lands, is under no greater obligation morally to perform his agreement than he who agrees for a valuable consideration received, to deliver to the purchaser personal property which he has sold, is to perform his.  If there be any distinction between the two cases let the learned casuist resolve it, for if on this point we are in error, we need to be instructed.

The act of the legislature, by authority of which the judgment in this case was rendered, is remedial in its nature, affording to the party who may be justly entitled to the performance of the contract in terms, the means of enforcing it.  The right to its enforcement is consistent with good faith, and with the dictates of a scrupulous and exact justice.  Then is the legislature competent to provide for the creditor a remedy to compel his debtor to do what he has solemnly and deliberately bound himself to do ?  On this point there can be no doubt, unless the act under consideration is in derogation of the laws of congress making United States notes lawful money, and a legal tender in payment of debts.  Upon the solution of this question our judgment must necessarily depend.  Before a court duly appreciating the measure of its duty, will declare an act of the legislature invalid as contravening the laws of congress, a case must be presented in which there can be no rational doubt (*Ex parte McCollom*, 1 *Cow.* 564).  For it is not on slight implication and vague conjecture, that the legislature is to be pronounced to have transcended its powers, and its acts to be considered void (*Fletcher* agt. *Peck*, 6 *Cranch*, 87).  It is insisted on the part of the appellant, that as the acts of congress making United States notes lawful money, and a legal tender in the payment of private debts, is the paramount law, therefore such currency is adequate for the discharge of all debts which are to be satisfied by the payment of money.  This is so, as we have already observed in respect to debts which are payable in money generally, but as to the con-

tract which is the foundation of the judgment in this case, it is more than a contract for the payment of money merely. It goes to the extent of defining by what specific act the contract shall be performed. By the admitted and settled rules of law, such a contract can be performed according to the agreement of the parties, only by the payment of the kind of money specified. Is there anything in law or morals opposed to such a contract? If not, what objection can there be to enforcing it in case voluntary performance is refused?

That a creditor may have uses for money of a particular kind, the acts of congress making United States notes lawful money, and a legal tender in the payment of debts, seem to have contemplated. He may have to pay duties on imports, and debts beyond the territorial communities where United States notes are the usual media of exchange, as verified by every day's experience. The importer of merchandise must have gold and silver money to pay the duties imposed by law on his importations. With such means only can he discharge his pecuniary obligations to the government. He must have metalic money for the purchase of such merchandise, because the paper currency of the government will not answer his purpose abroad. The importation of goods from foreign countries is a lawful trade, which congress under the constitution may regulate, and has, from time to time, regulated. By what means is the merchant who is engaged in this species of trade to provide for his necessities, that is, for the payment of his debts abroad, and his duties on imports at home, unless by securing payment from his debtors in the kind of money which he needs, and without which he must abandon the business in which he is engaged? Perhaps it will be answered that he must sell his goods for ready money, and not upon credit, and thus secure a price in gold and silver, and the purchaser from him must in his turn also sell for like ready money, in order to be furnished with the means

to pay the importer, and the consumer must also provide himself with the same kind of money, let it be derived from what source of industry it may, to pay for the goods he may need for consumption. If the owner of property may sell the same for metallic money, to be paid concurrently with the sale and delivery of it, we can see no reason why he can not sell for the same kind of money, to be paid at a future day. A sale on credit, is by the custom and laws of the trade, recognized as legitimate, and is deemed to be consistent with good conscience and sound morals.

It is sometimes argued that the act of the legislature under consideration discriminates invidiously to the discrediting of United States notes. We are unable to perceive wherein. There is certainly nothing in the act itself that can justify such an inference. If such a charge were made against the act of congress making United States notes lawful money, and a legal tender in the payment of certain debts, it might be maintained with more seeming plausibility that congress itself has limited the uses to which the notes can be applied, and has provided expressly that in certain cases gold and silver money shall be used within the United States for the discharge of pecuniary obligations, and thus by implication at least, has recognized an existing necessity for the employment of gold and silver money for the excepted cases. But even in this we cannot perceive that any unjust discrimination is made between the different kinds of money. With the people of some countries trade can be carried on by the use of silver money with greater convenience and advantage than with gold coin, yet it cannot be said that the merchant who furnishes himself with silver for his purposes thereby discriminates to the prejudice of gold. The argument that the act in question unjustly distinguishes between metallic and paper money, if valid as an objection to contracts for the direct payment of a particular kind of money upon

credit given, is equally so as to sales made for the same kind of money paid at the time. It would be illegal to hold that the effect in the one case is more or less detrimental to the credit of United States notes than in the other. Arguments of the character which we have here noticed, are too obviously fallacious to require even the attention which we have devoted to their refutation. Again, the man of means, actuated by patriotic motives to aid the government, or for the purpose of legitimate investment, may desire to accumulate United States notes with the view of exchanging them for the bonds of the government, payable within the time, and bearing the rate of interest specified and provided in the act of congress. Is there, or can there be any good reason why he may not provide for the desired supply by receiving payment from his debtors in the kind of money that would serve his purpose ? Is not the end which he seeks lawful, and are not the means legitimate to the end ? The acts of congress relating to the national currency, comprehend all kinds of money, and the various provisions of these acts must be considered and construed *in pari materia*. By this course it will be readily and at once perceived that while United States notes are by the sovereign behest made lawful money, and a legal tender in the payment of debts, except in the instances specified, gold and silver money is equally, by force of positive law, a legal tender in the payment of all debts, and is also recognized as an indispensable currency for purposes to which government notes cannot be applied ; and, therefore, the inference is logical if not inevitable, that congress did not design that these acts should interfere to prevent men from contracting for any particular kind of money which they might need.

Whatever, in the estimation of men engaged in monetary transactions, may be the difference in value between gold and silver money and the paper currency of the government of the same denomination, we cannot say judicially

that a gold or silver dollar is of greater or less value than a United States note of the same denomination, and we doubt if a case could be presented to a court of justice which would authorize evidence of a difference in the value of the two kinds of money. A court would be placed in an anomalous and absurd predicament in listening and giving heed to evidence designed to establish as a fact that one dollar is worth more or less than another (*Wood agt. Bullens*, 6 *Allen's Rep.* 516). By an act of congress of the United States, passed 1853, silver money, consisting of half dollars, quarter dollars, dimes and half dimes, issued in accordance with the standard of that act, was made a legal tender in the payment of debts in sums not exceeding five dollars. Now if A should loan to B one thousand half dollars coined under the act of 1853, and B should in consideration thereof, contract with A to pay the debt so created in like silver coin, would not a tender of the same kind of money in payment of the debt be a legal tender? No one, we apprehend, who understands the import of the word tender, would answer otherwise than in the affirmative. Then if the debtor in such a case could discharge his obligation by a voluntary performance of his promise, on what just principle could he escape it if he were so determined? The duties of the obligor and obligee in such cases must be reciprocal, and they should be commensurable. In the nature of things that which is lawful to tender on the one hand is lawful to demand on the other. (8 *Barb.* 821; 1 *Sim. & Stu.* 174 *and* 607; 2 *Ed. Ch. Rep.* 531; *Story's Eq. Juris.* § 723.) The act of the legislature under consideration is partly remedial in its nature. It creates no new right in the abstract. It does no more than add to the cases in which it is competent for the courts to enforce the execution of contracts specifically, and provides the means by which it can be done. In this the act is in harmony with the doctrines of equity jurisprudence relating to kindred subjects, and at the same time

Carpenter agt. Atherton.

it in no just sense contravenes the laws of congress making United States notes lawful money, and a legal tender in the payment of debts. It is alleged on the part of the appellant that the court erred in determining by judgment that the costs and disbursements of the action must also be paid in gold coin. The second section of the act provides that judgment for the plaintiff may follow the contract or obligation, and be made payable in the kind of money or currency specified therein. The plaintiff was entitled to recover his costs, which became a component part of the judgment, and payable in the kind of money specified therein.

The judgment is affirmed.

We concur, RHODES, SHAFTER, JJ.

SAWYER, J. I entered upon the consideration of the questions involved in this case, not without grave doubts as to the validity of the specific contract law; for when we held the act making treasury notes a legal tender in payment of all debts, public and private, to be constitutional, it seemed to follow as a logical consequence that if an agreement to pay a given sum of money in gold coin is a debt within the meaning of the law, then the debtor is entitled to discharge it by paying the amount called for in treasury notes; and this would be true in relation to all debts created generally, without any limiting or qualifying term in the contract creating the liability.

In such a case the law has given to the debtor his option to elect which kind of money made by law a legal tender he will adopt in discharging his liability. It is a right or privilege conferred on him of which he cannot be deprived except with his consent. But a right or privilege conferred upon an individual either by constitutional or statutory law may be waived by the party interested, unless such waiver would contravene public policy. Such is the case even in criminal law. Natural persons of full age, of sound mind, and under no recognized legal disability, are endowed

with an unlimited capacity to contract with other persons similarly situated, in all things except as to those matters which are against public policy, or prohibited by law. Gambling contracts, contracts for the payment of money in consideration of future cohabitation in a state of concubinage, and the like, are prohibited, as being contrary to good morals and the best interests of society. In some states usurious contracts are contrary to public policy, and prohibited. But there is nothing in a contract for a sufficient consideration to pay a given sum in gold coin or any kind of money, that is immoral or has ever been prohibited either expressly or by implication, and no policy against the making of such contracts has in any manner been indicated on the part of the government. The government has created three kinds of money, which it has provided shall be legal tender in the payment of debts—gold coin, treasury notes, and silver coin in limited amounts. But it has nowhere intimated in the remotest degree a preference for any one of these kinds of money over the others, or any desire that debts should be paid in any one rather than in the other, but has left it to the parties interested to act as their own interests may dictate. Neither so far as we have been able to discover, has there been any restriction placed upon the capacity or right of parties to contract, with reference to the several kinds of currency, or to other species of property other than is hereinafter specified. On the contrary, the law expressly recognizes contracts for the delivery of gold coin.

The act of March 3d, 1863, amending the act to provide for internal revenue, etc., provides that all contracts for the purchase or sale of gold or silver coin, or bullion, and all contracts for the loan of money or currency, secured by the pledge or deposit, or other disposition of gold or silver coin of the United States, if to be performed after a period exceeding three days, shall be in writing or printed, and signed by the parties, or their agents or attorneys, and

shall have one or more adhesive stamps, as provided in the act to which this is an amendment, etc., and no loan of currency or money on the security of gold or silver coin of the United States as aforesaid, or any certificate or other evidence of deposit payable in gold or silver coin, shall be made exceeding in amount the par value of the coin pledged or deposited as security, and any such loan so made or attempted to be made, shall be utterly void; and that all contracts, loans or sales of gold or silver coin and bullion, not made in accordance with this act, shall be wholly and absolutely void (12 *U. S. Statutes at Large, p.* 719, § 4). Here is an act of congress upon the subject of the purchase and sale of gold coin, which recognizes the validity of such contracts, and regulates the mode of making them. It only prescribes that in all cases where more than three days shall elapse between the time of making the contract and its fulfillment, the contract shall be written or printed, and signed by the parties, and shall have one or more adhesive stamps. Upon well settled rules of construction, all such contracts made in conformity with the provisions of this act, and also all contracts of sale and purchase not having three days to run are valid. This is the only limitation or restriction upon the power of persons to contract for the payment, or the sale and delivery of coin. When we come to a loan of currency or money on the security of gold or silver coin, or any certificate or other evidence of deposit payable in gold or silver coin, the law prescribes that the amount of the loan shall not exceed the par value of the coin. But no restriction as to the price is imposed upon the sale or the purchase, or any other dealings in coin. Of course, if contracts in regard to coin are permitted by law, these contracts must be valid, and the law contemplates that the contracts will be fulfilled according to their terms.

So also the act to provide ways and means for the support of the government, passed March 3, 1863, provides

that the secretary of the treasury is hereby authorized to receive deposits of gold coin and bullion with the treasurer and assistant treasurer of the United States, in sums not less than $20, and issue certificates therefor, in denominations not less than $20, each corresponding with the denominations of United States notes. The coin and bullion deposited for or representing the certificates of deposit, shall be retained in the treasury for the payment of the same on demand (*S. C. p.* 711, § 5). For the convenience of the people the government consents to become a depository of their coin when desired by the owner, and upon a deposit of gold coin the treasurer is authorized to issue a certificate of deposit to the owner, payable in gold coin. The coin thus deposited is not to be used, but is to be retained in the treasury for the payment of the certificate on demand. Why not pay it in treasury notes? Simply because it was deposited upon an agreement at the time that it should be returned in coin, and common honesty demands that the contract should be fulfilled. The government would get no coin deposited in its treasury upon any other terms. Hence when it undertook to become a depository of coin for its citizens, it was necessary to do as other bankers or persons receiving deposits do—enter into a contract to return the deposit in like funds. These certificates go into circulation in the place of coin, and become subjects of commercial and financial transactions. The government in these acts recognizes the propriety of such transactions, and why should not a banker in the absence of any law prohibiting such transactions, not receive gold coin on deposit, and when he has issued a certificate showing the fact, and in consideration thereof to repay the same in gold coin, not be bound by his contract? And why should not a party who has borrowed gold on the faith of his agreement to return the loan in like kind, be required to perform his solemn obligation? Good faith and good morals demand it. No law prohibits it, or prohibits making

such contracts. The government has made no discrimination through the law making power, in favoring one kind of money against another. It makes such contracts itself with the citizens, and expressly recognizes contracts between citizens for the purchase and sale of coin. The government also requires certain portions of its revenues to be paid in coin, and thereby imposes upon its citizens the necessity to procure it. No one disputes the right of a party to make all his business transactions upon a coin basis, and to refuse to part with any piece of property or perform any service, without requiring the coin in hand. If to meet the necessities imposed on him by government, or his convenience otherwise demands it, he may make a contract for coin to be executed by delivering it at the time the contract is made, why may he not make a similar contract providing for the anticipated emergency, to be executed in future, when the emergency arises? And if he make the contract, why is he not entitled to have it enforced according to its terms? We have seen that the act of congress permits a contract to sell and deliver gold coin at a future day. In what respect does an agreement for a sufficient consideration, to pay on some future day a given amount in gold coin, differ in principle from a contract to sell and deliver at a future day a like amount of gold coin? I can perceive none. The transactions in effect are substantially the same. Practically, the party who agrees to sell and deliver coin at a future day, does not agree to sell and deliver any specified piece or pieces of coin then in his possession, but he agrees to sell gold coin generally, relying on his ability to procure it when the time for its fulfillment arrives. A contract payable in coin is substantially the same thing. The only difference is in the form of expressing the contract, and not in the substance of the thing to be done. Such contracts do not appear at all to be against the policy of the law, for we have seen that the act of congress expressly recognizes,

and no where forbids them.   Coin is lawful money.   A
party may lawfully pay his debts in coin.   He may, at his
election, waive his right to pay in anything else, either
with or without consideration.   The only question is when
he shall exercise his right to make his election or waive his
privilege, and when he has made his election, and inserted
it as one of the essential terms and conditions of his con-
tract, for full and adequate consideration, there seems to
be no good reason in morals or public policy why he should
not be compelled to abide by his election and the express
terms of his agreement.   Such contracts then are valid.
But a contract to pay a sum of money in gold coin, and a
contract to sell and deliver coin at a future day, create a
debt in a general sense, and in that respect stand on the
same footing, but they do more.   The party agreeing to
pay or deliver gold coin at a future day, not only creates
a debt which he agrees to pay or discharge, but he also
waives the privilege which the law would have guaranteed
to him had he not voluntarily renounced it, and taken upon
himself an obligation to pay it in a specific kind of lawful
money, and nothing else.   This waiver and obligation are
essential conditions and parts of the consideration of the
contract, without which we must presume the contract
would not have been made.   The agreement to pay in coin
is as much a part of the consideration as the agreement to
pay at all, and the presumption is that an ample equivalent
has been received for the promise.   The parties then are
competent to contract; the contract is not against public
policy; it is not prohibited by law, is payable in lawful
kind of money, and is a lawful contract.   But in case of a
breach, independent of the statute, there was no adequate
remedy.   It was not one of the cases in which courts of
equity were in the habit of granting relief.   Although
equity did grant relief upon breach of many but not all
contracts in which the remedy at law was inadequate, and
in a court of law the only remedy was in a suit for dama-

Carpenter agt. Atherton.

ges. But damages could only be estimated in dollars and cents, and in legal contemplation, whatever the facts might be in the commercial world, a dollar in one kind of money was equivalent to a dollar in another. Hence while in theory there was a remedy, practically it was inadequate. There are many other cases in which parties who suffer from breaches in their contracts are without adequate remedy. For instance, a merchant has a large amount due him, payable upon a given day, upon which he relies to meet his own obligations. His debtor fails to pay at the time, the merchant in consequence fails to meet his own engagements, is attached, his business is broken up, and ruin is the result. The measure of damages in such a case, in a suit against his debtors, is only the money due and interest, while the actual damages may be three times that amount. But this is the only remedy which the law affords. In such cases, and in many others, it would be impracticable to afford full relief. Many difficulties inherent in the nature of things exist, which conspire to prevent the granting of a full measure of relief, and the law affords that measure of relief only which experience teaches on the whole to be the most practicable, and to approximate as a general rule most nearly to doing substantial justice to all parties. But in the case of a contract payable in coin, an easy and practicable remedy may be applied to the breach of that branch of the contract requiring payment in a particular kind of money, by a judgment analogous to a decree in equity for a specific performance. In these cases our statutes afford the remedy by authorizing a judgment for the specific kind of money agreed to be paid, and directs the execution to follow the judgment, and the sheriff to sell property for, and receive in satisfaction of the execution, the kind of money only which is provided for in the contract and judgment.

I do not see wherein this law, which only affords a remedy for a breach of contract lawful in itself, is in any

respect in conflict with the act of congress making treasury notes a legal tender in payment of debts. A contract payable in money generally, is undoubtedly payable in any kind of money made by law a legal tender, at the option of the debtor at the time of payment. He contracts simply to pay so much money, and creates a debt pure and simple, and by paying what the law says is money, his contract is performed. But if he agrees to pay in gold coin, it is not an agreement to pay money simply, but to pay or deliver a specific kind of money, and nothing else.

For these reasons, in addition to those contained in the able opinion of Mr. Justice CURREY, I think the law relating to specific contracts valid, and that the judgment should be affirmed.