## MARY MARSH *vs.* SELDEN BLACKMAN and GEORGE BLACKMAN.

Although, in many cases, a court of equity will not decree a specific performance, for the reason that it cannot compel obedience to its decree, yet, in such cases, where there is great hardship, equity will forbid any conduct hostile to the contract.

Contracts will not be permitted to be broken where there is not a plain, adequate and complete remedy at law, or when the damages cannot be known or estimated with any exactness, either because the effect will show itself only after a long time, or for any other reason. In cases coming within these definitions, it would be inequitable and unjust to permit fair, honest contracts to be avoided. *Per* BOARDMAN, J.

If a case be a proper one for a specific performance, either party, having the power to perform, is at liberty to do so, and may recover at law the com-

Marsh *v.* Blackman.

pensation fixed in the contract; and the other party cannot, by notice or otherwise, abrogate, annul or rescind the contract, without the consent of the former.

Thus, where the plaintiff and the defendants entered into a written agreement, by which the former agreed to support and maintain the infirm father of the latter during his natural life, and the defendants agreed to pay her a stipulated sum therefor per week, but afterwards sought to abrogate and annul the agreement, by a written notice to the plaintiff to that effect, refusing to pay any thing further under it, and forbidding her to support their father any longer; *it was held*, on demurrer, that such notice constituted no defense to an action by the plaintiffs to recover the weekly payments stipulated in the agreement.

The case of *Clark* v. *Marsiglia*, (1 *Denio*, 317,) does not conflict with this view.

THE defendants are sons of Justice Blackman. In June, 1859, they entered into a written contract with the plaintiff, whereby she agreed to support and maintain the defendants' father, then and now almost helpless, from age and infirmities, during his natural life, and the defendants agreed to pay her therefor $2 per week, to be paid semi-annually. Such payments were made to the plaintiff up to October 6, 1862, when the defendants gave notice to the plaintiff, as follows : "Take notice, that we hereby abrogate and annul the contract, which you claim to hold against us, for the support of Justice Blackman, and we require you not to furnish such support on our account, under and by virtue of the provisions of said contract, as we shall pay nothing further under said contract, and prefer to pay such damages as you may be legally entitled to than to proceed any further under it. October 6, 1862." The plaintiff, notwithstanding such notice, continued to support Justice Blackman until the commencement of this action, in May, 1866. The action is brought, on the written contract, to recover the weekly payments from October, 1862, to May, 1866. The defendants' answer sets up the giving of said notice, and claims that said contract was thereby annulled and rescinded, and that they are not indebted to the plaintiff in any sum. The plaintiff demurs to the answer, on the ground that it does not constitute a defense. Upon hearing, at special

Marsh v. Blackman.

term, the demurrer was sustained, and judgment entered for the plaintiff for the amouut due under the contract. The defendants appealed from such judgment,

*Wilkes Angel,* for the defendants.

*I. S. Newton,* for the plaintiff.

*By the Court,* BOARDMAN, J.  The plaintiff's right to recover in this action depends upon the assumed right of the defendants to terminate the binding force of the contract between the parties by notice, and to elect to pay the plaintiff such damages as she may recover, by reason of such breach, in lieu of the moneys to be paid under the contract, as compensation for services.

It is certainly true that, in a large class of contracts, no other remedy exists but an action for a breach of the contract, when either party refuses to perform.  In very many of these cases the equitable aid of a court, by decree for a specific performance, would be idle, since the court has no power to compel obedience to its decree.  We might give, as instances, the opera singer who should refuse to sing, an author who should refuse to write, a man of science who should refuse to investigate, a lawyer who should refuse to care for his client's case.  The court will not decree a specific performance, because it cannot compel it, but the weight of authority would indicate that equity would forbid any conduct hostile to the contract, in cases of great hardship.

It is apparent that the breach of such contracts would involve damages difficult, and, in most cases, impossible to ascertain with any precision.  Courts have, therefore, done all they could in favor of the injured party.  Formerly equity would only enforce contracts relating to the realty; but, as early as 1746, Lord Chancellor Hardwicke enforced, by specific performance, contracts relating to chattels, or purely personal.  (*Buxton* v. *Lister,* 3 *Atk.* 383.)  He held that it

was in the discretion of a court of equity whether it will decree a specific performance, or leave the plaintiff to his remedy at law. (*Joynes* v. *Statham*, *Id.* 388.) As trade and commerce have increased, the necessities for the exercise of this jurisdiction have increased, and the discretion of courts has led to some confusion and discrepancies in the decisions. (*Phyfe* v. *Wardell*, 2 *Edw. Ch.* 47. *Wedgewood* v. *Adams*, 6 *Beav.* 605. *Hall* v. *Warren*, 9 *Ves.* 608. *Bennett* v. *Smith*, 10 *Eng. L. and Eq.* 272. *Gibson* v. *Goldsmith*, 27 *id.* 588. *Hamblin* v. *Dinneford*, 2 *Edw. Ch.* 529. *Sauquireco* v. *Benedetti*, 1 *Barb.* 315. *Lumley* v. *Wagner*, 23 *Eng. L. and Eq.* 252. *Fredricks* v. *Mayer*, 13 *How. Pr.* 566. *De Rivafinoli* v. *Corsetti*, 4 *Paige*, 464. *Hooper* v. *Broderick*, 11 *Simons*, 47. 2 *Story's Eq. Jur.* § 724, *note* 1.)

From these conflicts of authority an approximate rule has been obtained, and is now adopted, which may not harmonize all the cases, but yet furnishes a basis upon which the discretion of the court may be exercised. Contracts will not be permitted to be broken when " there is not a plain, adequate and complete remedy at law," (2 *Story's Eq. Jur.* § 724, *n.* 1,) when the damages " cannot be known or estimated with any exactness, either because the effect will show itself only after a long time, or for any other reason. (3 *Parsons on Cont.* 364, 373. *See also* 2 *Story's Eq. Jur.* § 718, etc.) In cases coming within these definitions it would be inequitable and unjust to permit fair, honest contracts to be avoided. (3 *Pars. on Cont.* 350, etc. and cases cited.)

It is apparent that the contract in question comes within these rules, and would be enforced. There is no adequate remedy at law. The damages cannot be known or estimated with any exactness, for the reason that the time when the contract will end is uncertain, the cost and trouble of the support of Justice Blackman is wholly uncertain, speculative, and dependent on probabilities.

Marsh *v.* Blackman.

There is no power of assessing these damages correctly in an action at law, unless you wait for the death of Justice Blackman. Grave legal questions might arise from such delay. The defendants might become insolvent, the necessities of the plaintiff might painfully endure the deprivation of the fruits of the contract. The contract ought to be enforced. *Rhodes* v. *Rhodes*, (3 *Sandf. Ch.* 279,) is a case very pertinent, and is a strong authority in point. (*See also Phillips* v. *Berger*, 2 *Barb.* 608 ; *S. C.* 8 *id.* 527 ; 2 *Smith's Lead Cas.* 6*th ed.* 47, 49, 59.)

If it be a case for specific performance, the plaintiff, having the power to perform, is at liberty to do so, and recover at law under the contract. The defendants could not abrogate, annul or rescind the contract by notice, or otherwise, unless the plaintiff assented thereto. The contract being still valid, the plaintiff may rightfully enforce it.

The case of *Clark* v. *Marsiglia*, (1 *Denio*, 317,) does not conflict with this view. That was an action for personal services and materials furnished, under a contract for restoring paintings. If the plaintiff had stopped when the order for the work was countermanded, it would have been quite easy to have ascertained and recovered all the damages he had suffered by the defendant's breach of the contract. The character of the work to be done, the length of time required to complete it, the value of the materials and of the plaintiff's services, were all facts easily determined, and with as much certainty as ordinally happens in actions for damages. The plaintiff could have suffered no wrong in being put to his action for the breach. The value of his contract to him—the amount he could make by it—could be safely estimated and satisfied with damages.

The contract in question is certain, fair and just. It stands unimpeached by the defendants, wanting in no equities, tainted with no fraud, open to no suspicion. It is for the support of the defendants' father, an obligation imposed by law upon the defendants, which, for years past, they have

neglected to fulfill. While seeking to annul the contract, they did not offer to relieve the plaintiff of her burden.

Every sentiment of justice is for the plaintiff, every equity favors her cause; and the principles of law, in my judgment, sustain her position.

The judgment should therefore be affirmed, with costs.

[Broome General Term, November 19, 1867. *Mason, Balcom* and *Board-man,* Justices.]