LA SALLE EXTENSION UNIVERSITY v. R. M. OGBURN.

(Filed 24 October, 1917.)

1. **Contract—Breach—Correspondence Schools.**

   An agreement to take a correspondence course of study and to pay express charges on the "text," which the teacher should prepay and include in the account rendered to the student, does not permit the latter to declare his contract at an end and avoid performance on his part upon receiving a statement from the teacher showing that such charges amounted to $1 on the "text" that had been sent according to the contract.

2. **Same—Repudiation—Damages—Election.**

   One who has agreed to take a course of study from a correspondence school at a certain price may not, without legal cause, declare the contract terminated during the period of its existence, and by refusing to pay compel the teacher to sue at once for the damages that had accrued to that time; for the latter, at his election, may continue to perform his part of the contract according to its terms, and then sue for damages accruing to him upon the entire contract, or upon the different installments as they mature.

3. **Contracts—Breach—Entire Damage—Correspondence Schools.**

   One who has agreed to take a course of study from a correspondence school, with express provision that in the event any one installment be not paid sixty days after it becomes due, etc., the unpaid balance of the contract shall immediately become due, is held to the terms of his agreement; and when he breaches his contract within the period prescribed for the course, and prevents performance by the other party, he will be held liable for the full balance of payment specified in the contract.

4. **Evidence—Statements—Statute—Correspondence Schools.**

   An account for services rendered by a correspondence school comes within the meaning of Revisal, sec. 1625, and chapter 32, Public Laws 1917, and where the statute is complied with, is properly received as evidence in an action to recover them.

5. **Contracts—Breach—Benefits Accepted.**

   A party may not repudiate his contract by accepting the part which is beneficial to him and refusing performance of the balance.

CIVIL ACTION, tried before *Harding, J.,* and a jury, at February Term, 1917, of FORSYTH.

Plaintiff sued for the recovery of $60, with interest, from 20 November, 1912, alleged to be due upon an account for services rendered in the department of higher accountancy, a branch of the La Salle Extension University. The course of instruction given therein by correspondence is outlined and the necessary books described in the written contract signed by the respective parties and admitted by them to be their agreement. The following clause was inserted therein: "Please enter my enrollment for the complete university course of instruction in higher

accountancy for a period of one year, including text and service as out-lined above, for which I agree to pay to your order the sum of $66, total amount, payable as indicated below. Express charges on text to be pre-paid by the university and included in my account. All payments (ex-cept first payment, which should be made to the representative at the time of giving application) are to be sent by mail to the order of La Salle Extension University, Chicago. This enrollment is not subject to revo-cation. No verbal modifications or representations, except as herein expressed in writing, will be recognized, and no reduction in fees will be made on account of withdrawal. In the event of any one payment be-coming delinquent sixty days without special consent of the university, the unpaid balance becomes immediately due and payable. Received, $6. Balance at $6 month."

At the trial plaintiff introduced an itemized statement of its account, duly verified. Defendant objected to the admission of the statement, but the objection was overruled, and he excepted.

Defendant testified: "I signed the contract according to its date, 12 June, 1912. I received a statement, or demand, for payment from plain-tiff the first of the following month, which was July. That statement was destroyed, because I thought the account was closed. I wrote plain-tiff it was incorrect. I wrote them I did not owe them the amount of the statement sent me. The letter I wrote them was written on sta-tionery of the Maline Mills. I did not have any letter from them with a statement. I did receive a statement, but there was no letter with it. The letter to which I have just testified is not any of the letters which have been produced here in response to the notice from me to the plain-tiff to produce all the correspondence. I wrote them this statement of account was not according to the contract, and I thought best for me to just stop if it was to cost me $1 extra every month, and asked them not to send any more lessons. The first lesson came in, and I had not gotten that up and sent to them before I got this statement, and immediately upon receipt of the statement I wrote them, as stated above, that the statement was incorrect, and asked them not to send any more lessons to me. I wrote them that I would not take any more lessons, and, if I remember correctly, that I had the text-books and they had $6 of my money, and I thought it was an even break, and we would just call it off, and asked them to stop sending the lessons. They did not stop sending the lessons, but I returned them as soon as they came in, without opening them, and several of them were returned from the postoffice. I never carried them away from the postoffice. On 8 November, 1912, I received a letter from plaintiff, and my reply is on the bottom of the letter." The following is the letter, and reply of defendant, signed by the respective parties, which the defendant offered in evidence:

"Dear Sir: Your answering any one or all of the following questions will be appreciated: 1. Have you any grievance? 2. Are you unable to make payments? 3. Do you feel that your not taking up the work is any just reason for not remitting? If you have a grievance, or are unable to make payments, or if there is any other reason for your not remitting, are we not entitled to an explanation?"

"Gentlemen: I made a contract with your salesman for one course of instruction in higher accountancy for $66, and intended taking the course, but upon receiving statement from your bankers for $67, less payment of $6, I decided that I'd better drop it before investing any more money, as you might add another dollar for each month, and as that is pretty expensive (?) collecting, thought I'd save you and myself money by taking this step. Will keep the books, but will mail you the lessons, as I've not looked at any but the first two."

In the next letter of the correspondence, dated 19 March, 1913, plaintiff asks the defendant why he has not remitted the amount then due, or at least a part of it, and then says: "I will appreciate your courtesy if you will let me hear from you by return mail, and if you have any grievance and will let me know what it is, I assure you I will do everything in my power to adjust it to our mutual satisfaction. Thank you in advance for the courtesy of an early reply." To this defendant replied on the back of the letter as follows: "If you want to do me a favor, you'll see that every one connected with your company stops writing me letters. I canceled this contract when I received the first statement, because your salesman did not turn in contract according to the duplicate he left me. I've written you an explanation once or twice before, and I promise you this is the last communication you'll receive from me." Defendant further testified that he did not remember exact form of the statement, whether it was in two columns, one showing amount of whole debt, and balance of debt in the other, but it was "for the whole thing, with $1 added." He then said: "I worked up the first lesson, but refused to have anything further to do with the other lessons after I got the statement."

The court overruled defendant's motion for a nonsuit, and he excepted. Defendant then requested these instructions:

1. That if the jury believe the evidence, they are instructed to answer the issue "Nothing."

2. That if the jury believe the evidence, the contract between the plaintiff and defendant was an executory contract, or a contract to be performed in the future on the part of the plaintiff; and if the jury should find from the evidence that the contract was breached by the defendant in refusing to accept and pay for the lessons to be furnished under such contract, it was the duty of the plaintiff to stop sending the

lessons after it had notice that the defendant had repudiated the contract; that in such event the plaintiff would be entitled to recover the damages only which had accrued to it up to the time the contract was breached, if you find from the evidence that the contract was breached by the defendant; that the plaintiff could not continue the performance of the contract on its part after notice of the repudiation by the defendant, under such circumstances, and recover the full amount specified in the contract.

The court refused to give the same, and defendant again excepted.

The court instructed the jury that if they believed the evidence in the case the issue should be answered in favor of the plaintiff—that is, for $60 and interest from 20 September, 1912. Defendant excepted. Verdict and judgment for plaintiff. Defendant appealed, after submitting the usual motions and reserving his exceptions.

*William H. Beckerdite for plaintiff.*
*Louis M. Swink and Gilmer Korner, Jr., for defendant.*

WALKER, J., after stating the case: There is no merit in the defense. A recovery is resisted simply on the ground, which is the sum and substance of it, that plaintiff charged $1 more in the statement of the account than he thought was the amount due by him. This $1 was the express charges "on the text," which is expressly allowed to the plaintiff in the contract, and had been prepaid by it. The language of the agreement in this respect is: "Express charges on text to be prepaid by the university and included in my account." The statement sent to the defendant was correct, but if not so, because of the $1 item being inserted in it, the defendant could not abandon the contract, but should have paid what was then due on it and declined to pay the $1. He would then have been within the law, but when he repudiated the contract entirely he certainly went too far and beyond the pale of the law. The overcharge, if any was made, did not warrant his refusal to pay anything, or was no such breach of the contract, if breach at all, as justified his conduct. Nor could defendant break the agreement by refusing to pay, and compel the plaintiff to sue at once for his damages. The latter may refuse to treat the renunciation by the other party as a breach, and may continue to perform the contract *in omnibus,* as it is expressed, to the time when full performance on his part is required by its terms, or he may elect to sue at once for the breach, the option being his to adopt either course at his will. A party is entitled to the full benefit of the contract if he claims it. We said, in *Edwards v. Proctor,* 173 N. C., 41: "When parties enter into a contract for the performance of some act in the future, they impliedly promise that in the meantime neither

will do anything to the harm or prejudice of the other, inconsistent with the contractual relation they have assumed. The promisee, it also has been said (and this seems to be the better reason), has an inchoate right to the performance of the bargain, which becomes complete when the time for such performance has arrived, and meanwhile he has a right to have the contract kept open as a subsisting and effective one, as its unimpaired and unimpeached efficacy may be essential to his interests," citing Clark on Contracts (1904), pp. 445, 447; *Frost v. Knight,* L. R., 7 Exch., 111. The subject is fully discussed in the principal case. In *Vittum v. Estey,* 67 Vt., 158, the Court says: "As to a breach by renunciation, it is settled law in England and in many jurisdictions here that when one party to a bilateral contract, before the time of performance on his part has arrived, repudiates the entire contract, or a part of it that goes to the whole consideration, and declares that he will no longer be bound by it, the other party may, *if he pleases,* act upon the declaration and treat the contract as thereby broken and at an end for all purposes except for bringing a suit upon it, which he may bring at once, without waiting for the time of performance." So we see that the innocent party has an election to proceed with the execution of the contract until there has been full performance by him and then sue for damages, which will extend to the whole contract and will compensate for the benefit he would have derived therefrom if the delinquent party had also kept his promise and fully performed his part of the agreement. 9 Cyc., at p. 637, says: "The renouncing party cannot force the other, nor is the other bound, to sue for a breach of the contract before the day fixed for performance arrives, and have the damages assessed as of the time of the renunciation. The party keeping the contract, in other words, need not mitigate the damages by treating as final the premature repudiation." This is the general rule, and while there may be a few cases apparently looking the other way, it will be found upon a close examination of their facts that they are made exceptions to the rule because of special circumstances which made it inapplicable. The rule holds good where, if there is a renunciation, the damages recoverable in an action for the breach before the full time of performance has arrived will not be an adequate compensation for the same. There may be exemptions from the operation of the general rule in cases where the claims of the injured party can be satisfied when he is fully recompensed for his part performance and indemnified for his loss in respect to the part left unexecuted. *Marsh v. Blockman,* 50 Barb. (N. Y.), 329; *Watson v. Smith,* 7 Oregon, 448. Here the money was payable in installments as the work was periodically done, and the case is like *Smith v. Lumber Co.,* 142 N. C., 26. But it is not necessary to invoke this principle in order to decide our case, as the contract expressly provides that in the event of any one

installment not being paid for sixty days after it becomes due, and without the consent of the university, the unpaid balance of the amount payable, under the terms of the contract, shall immediately become due. We see nothing in the correspondence indicating that the plaintiff made any excessive demands upon the defendant or called for more than was due. The statement sent at first to defendant was manifestly intended to show what was due in all, and not as a demand for more than the installment, which was then payable. In his eagerness to rid himself of an undesirable bargain, he unconsciously misconstrued his own deliberate contract, which is plainly expressed to the contrary of what he contends is its proper meaning. If he had appealed to the generosity of his creditor, instead of repudiating his solemn agreement, he would perhaps have received a more acceptable response from it, and one which might have relieved him of his present embarrassment; but this was not done, and we must view the situation in the clear light of the law. The case comes within the principle of *Teeter v. Horner Military School,* 165 N. C., 767.

The objection to the statement of the account as evidence under the statutes (Revisal, sec. 1625, and Public Laws 1917, chap. 32) cannot be sustained. It is answered squarely by the terms of those acts. This is "an account for goods sold and delivered, for services rendered and labor performed," which is the language of the Public Laws of 1917, chap. 32. It was ratified 12 February, 1917, and took effect from that time. The trial took place 22 February, 1917, so that the act applies to this case and brings it within the principle stated in *Carr v. Alexander,* 165 N. C., 665.

There is really no disputed fact in this case, and the charge of the court, therefore, was correct, both in form and substance, and it follows that the motion for a nonsuit was properly denied.

If the defendant could dictate to the plaintiff when their contract should cease and be determined, and could correctly and legally insist that he was liable only for damages at the time of the breach, and not to the full extent of the benefit which would have accrued if the contract had been fully performed according to its terms, as settled by the parties, it would seriously impair the value of contracts. In *Teeter v. Horner Military School, supra,* we said, in regard to a similar contract, where there was an advance payment for a period of the school term which was unexpired when plaintiff's son was expelled for good cause: "An examination of our cases, while they do not deal with the subject in every phase presented in this record, will show that we have substantially approved the doctrine as already stated. It is founded upon justice and common sense, and should prevail, as in no other way could our schools be successfully conducted," citing *Horner & Graves v. Baker,* 74 N. C., 65; *Horner School v. Westcott,* 124 N. C., 518. A contract is not

made to be broken, but to be kept, and it is implied that neither party will do anything to prevent this performance or to disappoint the just expectation of the other party that it will be carried out in accordance with its terms.

It may also be said that defendant could not reject a part of the contract and accept another part. He could not keep that which was beneficial, viz., the text-books sent to him, and refuse to perform the part which he did not like. He must reject all or none, as this is the essence of fairness. *Publishing Co. v. Barber,* 165 N. C., 478; *Rudasill v. Falls,* 92 N. C., 222; 31 Cyc., 1257, 1258; *Brimmer v. Brimmer Co.,* at this term.

There is no harshness in requiring the defendant to do what he promised should be done by him, and it is no reason, in law or in morals, for breaking the contract that he had acted improvidently in making it. The defendant did not even ask that he be allowed to compensate the plaintiff as of the time of the breach by him, but repudiated the contract and broke off relations with the plaintiff, refusing peremptorily even to answer its letters, which were conciliatory in their tone.

There was no error committed at the trial of the case.

No error.