[Civ. No. 4017. Third Appellate District.—May 20, 1930.]

R. R. CRAWFORD, Respondent, v. PIONEER BOX AND LUMBER COMPANY (a Corporation), Appellant.

Stanley Pedder and Wm. S. Bayless for Appellant.

Allen & McNamara for Respondent.

PARKER, J., *pro tem.*—The action was to recover certain sums of money alleged due plaintiff from defendant. The cause of action embraced two counts. The first count sought a recovery as damages on account of defendant's breach of a contract and the second count was to recover amounts alleged to have accrued from performance by plaintiff up to the time of the breach by defendant.

The case was tried by the court sitting with a jury and resulted in a verdict for plaintiff on both counts. At the conclusion of plaintiff's testimony defendant moved for a nonsuit, which motion was denied. When the verdict of the jury was returned defendant moved for judgment in its favor notwithstanding the verdict, which motion likewise was denied. Thereafter defendant moved for a new trial, which was denied. From this history of the procedure it will be noted that the case has received much consideration in the court below and that appellant's contentions have been frequently urged at every available opportunity, excepting only a motion for a directed verdict.

It is the claim of appellant that the evidence, as a matter of law, is insufficient to support the verdict and the judgment based thereon. As a welcome exception to the ordinary appeal on this ground, appellant does not attempt to have any conflicts in the evidence again determined. It rests its appeal upon the insufficiency of the plaintiff's case, regardless of any alleged defense thereto and also upon such other evidence as is undisputed. Therefore, this appeal requires that the facts be reviewed in some detail.

Plaintiff and defendant corporation on February 25, 1926, entered into a written contract whereby plaintiff bound himself to fall, limb, buck and deliver to defendant's loading skids certain timber standing upon the lands described.

The territory wherein stood the timber to be cut and hauled appears to be and admittedly is a section wherein seasonal hardships prevent all-year hauling. It was anticipated, therefore, that conditions might arise which would cause greater difficulties or would necessitate complete cessation of the work for a time. The contract provides that if

the roads get in such condition that trucks could not travel and plaintiff is forced to quit hauling, then plaintiff will return as soon as the fall rains come and the roads are made passable and will complete the work during the next fall, winter and the following spring.

After the execution of the contract plaintiff arranged for the necessary equipment, including trucks, logging paraphernalia, bunkhouses, etc., and shortly thereafter began the work. The work of falling the timber began on or about March 12, 1926. On July 30th the parties entered into a second or supplementary agreement, being in effect a modification of the first agreement.

This latter arrangement was in writing and provided that defendant would pay plaintiff, over and above the price agreed upon in the original contract, the sum of one dollar per thousand for all logs delivered under the contract after July 31, 1926, which additional amount, however, was to be held back until the completion of the contract.

About August 10, 1926, plaintiff was ordered by defendant to stop falling and clean up. At this time the conditions of the roads had become such as to make hauling difficult and impracticable, if not impossible. It does not seem, however, that this was assigned as the reason for the order to stop, nor does it appear that this condition was agreed upon as being the basis of the order. And in this connection it might be noted that under the contract it was the judgment of plaintiff that should determine the necessity of a cessation of operations. The work was stopped and all operations in the timber for the time discontinued. In September of the same year, within a month from the time of discontinuance, the road conditions improved to normal or better and plaintiff was desirous of resuming activities. Without reciting in detail the various conferences between plaintiff and the representatives of defendant, it will suffice to say that the record gives ample support to the conclusion that the defendant company kept deferring action and evading the demands of plaintiff and through one pretext or another put off the entire matter. Finally, plaintiff sought the aid of attorneys. These attorneys wrote to the president of defendant company, notifying him of their retainer and advising that a further failure to come to some understanding with plaintiff as to his contract would necessitate suit for the damages

resulting to their client. Thereupon, defendant replied that there was nothing to stop plaintiff from resuming his work. This was in December, 1926. Weather conditions prevented an immediate return, but on February 10, 1927, plaintiff moved back into the woods and resumed his operations. In June plaintiff received a letter from defendant company as follows:

"Mount Shasta, Siskiyou County,
"California, May 13-27

"Mr. R. R. Crawford,
"Mount Shasta, California.

"Dear Sir:—

"In regard to further delivery of logs at Morrison.

"We are advised by our city office that no timber is to be felled other than on the North half of Section 15 where you are now working until such time as you are further notified.

"Yours truly,
"PIONEER BOX & LUMBER COMPANY,
"E. H. KAUPP.
"By E. H. KAUPP.

"cc MR. PEDDER."

In explanation thereof it may be noted that Morrison was the loading station and that Mr. Pedder to whom copy is noted as sent, was the president of the defendant company and that the lands other than section 15 were owned by defendant. At this time there was a small portion of section 15 to be cut and this was done and plaintiff stopped. In addition to the letter the order was given verbally to stop all cutting outside of section 15. Plaintiff received no further orders and hence the present action.

In the court below plaintiff offered to prove what disposition he thereafter made of his trucks, but defendant objected, contending that it was wholly immaterial. Likewise, plaintiff attempted to show that at or about the time defendant notified plaintiff to stop cutting it had adopted a changed policy in its lumber business to the end that the lumber would be handled differently. Defendant again objected. In both instances it was defendant's claim that the only question involved was whether or not defendant had breached the contract; that if defendant had breached the contract its

reasons for so doing were immaterial. We are not reviewing the trial court's action on these objections, but simply stating the defendant's position there as here. To some extent the position of defendant negatives the argument that will be later considered.

█ First, we may clear away some of the claims of defendant anent the authority of its agents and particularly the writer of the letter ordering cessation of work. There is no question but that the contract itself was the contract of the company, executed by one in a position similar to that of E. H. Kaupp. The letter, on its face, indicates that a copy thereof was forwarded to the president of the company, Mr. Pedder. This gentleman, aside from his position as president, was and is also one of the counsel appearing in the case and was a witness at the trial. As a witness he made no denial of his receipt of a copy nor did he make any claim or give any testimony questioning the authority of the writer. Mr. Kaupp was likewise a witness, called by defendant, and his entire testimony was on the assumption that he was authorized to handle the matter for the company. He was not asked as to his authority and no serious dispute seems to have arisen in the court below on that question and is urged for the first time here. Without further detail of facts there was sufficient in the record to sustain a finding of authority on the part of Kaupp. (*Ellet* v. *Los Altos Country Club Properties,* 88 Cal. App. 740 [264 Pac. 270].)

█ It is appellant's argument that, conceding the authority of Kaupp, which is only perfunctorily questioned, the letter and his orders to stop were not sufficient to warrant plaintiff in declaring the contract breached. It is contended that plaintiff could have, and should have, wholly ignored these orders and gone on with his contract and delivered logs until defendant refused to accept more; that, irrespective of what might be said or what orders might be given, plaintiff was bound under his contract to deliver the logs and that there was nothing that defendant was bounden to other than acceptance thereof and payment therefor. In its last analysis the argument in effect is that if performance were made impossible, still plaintiff must perform, because, in effect, the order to cease cutting timber on the land of defendant took from plaintiff the right of entry thereon and without such a right of entry it would be impossible to fell timber thereon.

Elaborating further the argument of appellant it is claimed that the right of entry upon the lands was not a condition precedent in so far as plaintiff's duty of performance was concerned. In *Alderson* v. *Houston,* 154 Cal. 1 [96 Pac. 884, 888], being a case relied upon by both sides here, the court says:

"Stress is laid by counsel upon the words 'prevented from going on' . . . The same language—i. e., that the party suing must be 'prevented' from performance, has been used in numerous cases, but wherever the attention of the court has been directly called to the sense in which the word has been used, it has been held not to mean that there must be physical prevention, but that any acts, conduct or declarations of the party evincing a clear intention to repudiate the contract and to treat it as no longer binding are a legal prevention of performance."

And further in the same case:

"It would seem clear, on principle, that a mere declaration of the party of an intention not to be bound, or acts and conduct in repudiation of the contract, will not, of themselves, amount to a breach, so as to create an *effectual* renunciation of the contract, for one party cannot, by any act or declaration, destroy the binding force and efficacy of the contract. 'Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen,* and holding fast to the contract to wait till the time for its performance has arrived, or to act upon it, and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. . . . If he does so elect, it becomes a breach of the contract, and he can recover upon it as such.' Upon the election to treat the renunciation, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist, except for the purpose of maintaining the action for the recovery of damages. These views are amply sustained by numerous decided cases."

The decision cites many authorities from our own and other jurisdictions. The principles announced have never been questioned. The difficulty arises in their application to varying conditions of fact. In many decided cases it has

appeared that the declarations, acts and conduct or even the actual breach affect only a portion of the contract or else goes to some act or requirement which does not control or affect a complete performance. These cases present instances of the violation of some covenant which is not a condition precedent to the performance by the party seeking damages for the breach. The law in such cases is announced in the older case of *Cox* v. *McLaughlin*, 54 Cal. 605. But the doctrine of a violation or breach going to a condition precedent is not here involved. The performance of the contract here depended wholly and entirely upon plaintiff's access to the lands of the defendant company. Such access being denied him, he could proceed no further. Just how far the notice to stop cutting timber had the effect of withholding or denying access to the lands was a question of fact as well as one of law. If the lands had been so situated that access thereto was possible only over a certain road or trail it can be readily seen that a blocking of or destruction of the road by the company would have accomplished a complete prevention of performance. In only a slighter degree did this order to stop act as a barrier to approach. Under the contract no interest in or title to the lands involved passed to plaintiff. All that distinguished plaintiff from a mere trespasser was the implied license of defendant. The latter retained at all times control of the lands and the disposition of any timber thereon standing. Whether plaintiff was removed from the lands by actual physical force or merely by order the effect is the same. The appellant's theory in the court below that the reason for the order was immaterial supports such a conclusion.

As urged by respondent, it might very well be that changes in the market or the desirability of leaving the timber stand awaiting a more opportune time may have influenced the decision of appellant. A variety of circumstances can be readily assumed wherein appellant might have been much advantaged by leaving the timber stand and paying plaintiff his anticipated and normal profits under the contract rather than to pay the entire price for a completion of the contract and then leave the timber lie unused and decay.

It is to be noted that there is no complaint in the admission or rejection of evidence. Neither is complaint made on the matter of the court's instructions to the jury. Therefore we

assume, as we must, that the law applicable was given to the jury and that every legal principle controlling the acts was fully explained by the court below. Further, the jury doubtless took into consideration the early notice to quit, given in 1926, and withdrawn only after a delay of some five months. It could be fairly inferred that in the first instance there was manifest some design to abandon the contract on the part of the defendant company. And the effect and intent of the order to stop was to be ascertained from all the facts in the case. Appellant in the court below made no attempt to show that the order had any different intent behind it than a complete abandonment on its part. It makes no such attempt here. It rests wholly upon the proposition that plaintiff could have ignored the order and was bound to proceed until a refusal of acceptance by defendant.

It would be a laborious task and a useless one to attempt to cite and then distinguish all of the cases on the subject of breach of contract, because the variety of contracts is infinite and each case necessarily is controlled by the particular facts under discussion. The general principles hereinafter stated will suffice. And mindful of and in conformity with these principles we hold it to be the law that where, as here, the subject matter of the contract is such that ability to perform is contingent upon a permissive entry to or upon the lands of one of the parties and such entry is refused, a sufficient record is presented wherein recovery in damages may be sustained. Therefore, we conclude that when appellant notified plaintiff to stop all cutting of timber upon its land, plaintiff was thereafter unable to carry through with his contract and was entitled to his remedy in damages, and particularly where, as here, the record is silent as to any subsequent action on the part of the appellant, either by way of explanation or otherwise.

Appellant further argues that plaintiff by his acquiescence is estopped. Estoppel was not pleaded, and even if it had been the facts would not sustain the plea. There is no evidence of affirmative assent and the only acquiescence noted is the failure of plaintiff to continue on after the directions to stop. Sufficient has been said thereon. It is true that if plaintiff had made inquiry and waited some months, as was the case in 1926, and finally threatened suit,

the defendant may have again changed its attitude. In fact, many things might have happened. But we are considering only what did happen.

■ Appellant next urges that at the time the notice to stop was given the term of the contract had lapsed. This contention is based upon the provision of the contract wherein plaintiff agreed that if the road got in condition to prevent hauling he would stop and would return again as soon as the roads were passable and would complete the work during the next fall, winter and following spring. The answer to this contention is that from August, 1926, to January 27, 1927, plaintiff was prevented from performing his contract by refusal of the right of access to the lands. And appellant cannot now claim the benefit of its own prevention. Prevention of performance by the promisee is equivalent to performance by the promisor. (*Alderson* v. *Houston, supra.*)

■ Finally, appellant contends that with reference to a small portion of the moneys alleged to have been due in the second count the action was prematurely brought, inasmuch as under the contract defendant was to hold back a certain amount until all limbs and brush had been cleared and burned. It is needless to discuss this. While the facts might sustain the claim, and we do not so decide, yet the record discloses that all of the requirements had been complied with at the time of trial, and the money claimed is now due. Therefore, if we should hold with appellant here, it would simply necessitate a new trial on that one issue where appellant concedes its liability. There is abundant evidence to sustain the verdict of the jury on the theory of a substantial compliance prior to the time of bringing suit.

Upon the entire record we find no sufficient reasons to hold that either the verdict or the judgment or any of the intermediate orders complained of were erroneous.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.