## HUNT FOODS, Inc. v. O'DISHO et al.
### No. 29964.

United States District Court
N. D. California, S. D.
June 20, 1951.

Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiff.

Arthur R. Friedman, Modesto, Cal., for defendants.

MURPHY, District Judge.

This is an action for specific performance, a remedy to which the plaintiff claims it is entitled upon principles of equity and pursuant to the provisions of Section 1788 of the Civil Code of California.

The nature of the proceeding suggests a brief recitation of the facts which gave rise to the action.

It appears that in October of 1948, the defendant O'Disho interested himself in the purchase of a twenty (20) acre peach orchard in Stanislaus County, California.

His lack of funds precluded purchase through ordinary commercial channels, with the result that one Flebut, a real estate broker of the county suggested that adequate financing might be available from a cannery.

Accordingly a meeting was arranged by Flebut with one Schoenfeld, a district field supervisor employed by plaintiff, and the defendant. Flebut was also present.

Schoenfeld agreed to recommend a loan to his superiors, subject to the execution of a term contract for sale to plaintiff of the peaches to be grown upon the orchard.

Authorization for the loan was obtained and in October, 1948 plaintiff and defendant executed a written contract in Schoenfeld's office at Oakdale, California, by the terms of which defendant promised to sell and plaintiff promised to buy the peaches for the seasons 1949 to 1953, inclusive, at the average price paid by plaintiff to growers in that county in the current season of delivery.

By November 5, 1948, the deal for the purchase of the orchard was concluded. This required execution by defendant of a promissory note in favor of plaintiff in the amount of Twelve Thousand Dollars ($12,000.00) payable on September 15, 1949, secured by a deed of trust upon the property and a crop mortgage.

In March and April 1949, defendant needed money to prepare for the coming season and plaintiff loaned defendant Two Thousand Dollars ($2,000.00) in two installments.

In accordance with the contract the 1949 (August) crop was delivered to plaintiff at a price of Forty Dollars ($40.00) per ton, a price fixed by the Canning Peach Association, a cooperative organization of growers, and representative of the average price paid by plaintiff to peach growers in Stanislaus County.

Plaintiff applied the money against the loan which amounted to Fourteen Thousand Dollars ($14,000.00) plus interest. This left a balance outstanding in the amount of Two Thousand Eight Hundred Three and 97/100 Dollars ($2,803.97), including interest.

This was paid in May of 1950 and the promissory note was cancelled, the property was reconveyed and the crop mortgaged satisfied.

Testimony adduced upon the trial reflects that while the peach market was over-supplied in 1949, it was in short supply in 1950.

This scarcity was occasioned by a green drop of Fifteen Per Cent (15%) of production imposed pursuant to the Agriculture Marketing Act of the State of California, Agricultural Code, § 1300.10 et seq. The summer of 1950, with the Korean situation caused an increased demand for peaches.

In the summer of 1950 defendant notified plaintiff that he did not intend to deliver his peaches to plaintiff in the future. He sold the 1950 crop to American Home Foods, Inc., originally a defendant herein for Sixty-seven and 50/100 Dollars ($67.-

50) per ton. The price set by the Canning Peach Association was Sixty Dollars ($60.-00) per ton. Thus defendant obtained a premium of Seven and 50/100 Dollars ($7.-50) per ton over and above the price he would have gotten from the plaintiff. This action resulted.

Plaintiff seeks no damages, but rather seeks specific performance of the contract for the remainder of its term. By the same token, plaintiff concedes that if the remedy be allowed, plaintiff is bound likewise to accept delivery of the forthcoming crops and to pay the determined price.

Our attention is directed by defendant to certain discrepancies in the testimony concerning matters which occurred prior to the execution of the contract. But these are minor things, such as statements concerning the productivity of the orchard, the necessity for "picking money", all of which are unimportant in the face of the executed agreement.

Passing these matters for the reasons stated above it is defendant's contention that the contract left uncertain the price to be paid for defendant's peaches because plaintiff supposedly reserved the right to fix the price in the future.

The pertinent provision of the contract in this regard reads as follows: "Notwithstanding anything to the contrary in the specifications pertaining to size and/or grade in the attached contract contained, the specifications pertaining to size and/or grade applicable under this contract each season shall be such size and/or grade specifications as are set forth in Buyers seasonal contracts entered into with Cling Peach growers in Stanislaus County, and Seller agrees to deliver his Cling Peaches under Buyers seasonal contracts and the price or prices payable under this contract shall be the Buyers average net high price or prices Roadside, paid for the current season in Stanislaus County for Cling Peaches, of the size, grade, variety, and quality delivered hereunder during said current season."

Scrutiny of this provision and analysis thereof, indicates to this court that the contract does not give the buyer any absolute or arbitrary right to fix prices. To the contrary, the price to be paid is the average price to be paid to such growers. In other words, the plaintiff is required to go into the open market, to compete with other canners in the buying of peaches. Out of this market eventuates the *average price* to be paid peach growers in Stanislaus County. (Italics ours.) Indeed it is inconceivable that plaintiff, as a single canner, out of (presumably) many could loom so large as to exercise such power.

The average price paid is a matter of mathematical calculation. The contract here is a term contract and as such is related to the average price paid under plaintiff's *seasonal* contracts as well as term contracts. (Id quod certum est quod certum reddi potest.) (Italics ours.)

Section 1729, Civ.Code of California, provides:

"(1) The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties.

"(2) * * *

"(3) * * *

"(4) Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price. What is a reasonable price is a question of fact dependent on the circumstances of each particular case."

See also, Williston on Sales, Vol. 1, Sec. 167 at Page 434, wherein it is said: "Likewise, either in an executory contract to sell, or in a sale, the parties may provide for some means of determining the price later by outside circumstances. Even an agreement that the price shall be fixed by an interested party is valid if his interest is known and there is no bad faith."

 It is the opinion of the Court that this contract is specifically enforceable. Rescinding from statutory requirements, it is well settled that a "contracts for the delivery of goods will be specifically en-

forced, when by their terms the deliveries are to be made and the purchase price paid in installments running through a considerable number of years. Such contracts 'differ from those that are immediately to be executed.' "

The language above quoted is taken from Eastern Rolling Mill v. Michlovitz, 157 Md. 51, 145 A. 378, 383. The contract in that case provided for the purchase of Steel scrap from defendant's business. It was not dissimilar to the contract in the case at bar since it was to continue over a period of years without rigidity of price. Rather price was to be determined upon quotation of the Philadelphia market.

To the same effect is Morgan v. Patillo, 5 Cir., 297 F. 140, and Equitable Gaslight Co. v. Baltimore Coal Tar & Manufacturing Co., 63 Md. 285.

Looking at the situation from the statutory viewpoint specific performance is proper under Section 1788 of the Civil Code of California irrespective of any equitable limitations.

That section reads as follows: *"Specific performance.* Where the seller has broken a contract to deliver specific or ascertained goods, a court having the powers of a court of equity may, if it thinks fit, on the application of the buyer, by its judgment or decree direct that the contract shall be performed specifically, without giving the seller the option of retaining the goods on payment of damages. The judgment or decree may be unconditional, or upon such terms and conditions as to damages, payment of the price and otherwise, as to the court may seem just."

By its enactment of this Section the legislature of the State of California unquestionably had in mind the liberalization of the law regarding specific performance of contracts for the sale of chattels. Vide Bomberger v. McKelvey, 35 Cal.2d 607, 220 P.2d 729; Pittinger Equipment Co. v. Timber Structures Inc., 189 Or. 1, 217 P.2d 770.

Certain it is, in the very nature of plaintiff's business, that term contracts such as the one before the court are entered into in order that a steady and not inconstant flow of fruit may find its way into Canneries. No other reason suggests itself as the basis for the financing of the purchase of the ranch.

Nor is there any room for the conclusion that such a contractual arrangement would be unfair. The defendant has his ranch. It is fully paid for, and as a matter of simple reasoning it is not out of order to assume that defendant may well be better off, with the insurance of a continuing market for his peaches regardless of changing conditions affecting supply and demand.

It is to be observed in passing that the court views with suspicion the testimony of the defendant. He is not an unwary man to be taken in by the machinations of designing cannery agents and representatives. His background evidences a wily appreciation of business relationships in a variety of forms. Former waiter, dealer in rugs, with an instinct for a sharp transaction, he gives the obvious impression of a man who seized the opportunity to capitalize Seven and 50/100 Dollars ($7.50) per ton by selling his peach crop to American Home Foods, Inc., and then preferring to gamble as it were, upon the tenuous possibility of greater prices, refuses to conform to the terms of a contract openly and legally binding upon him. The long range view might well have been taken in the instant case.

Diligent counsel on both sides have adequately explored the various facets of this controversy.

The Court does not deem it necessary to elaborate further in view of the Court's conclusion as herein expressed.

Accordingly, it is the judgment of this Court that the defendant specifically perform by delivering plaintiff his peaches for the same price received by other growers in Stanislaus County, pursuant to the plain and unequivocal terms of the contract. Let judgment be entered accordingly, and let findings of fact and conclusions of law be prepared pursuant to the rule.